### H. S. BUCKNER & CO. *v.* WINGFORD, NEWKIRK & CO., ETC.

**Homestead—Bona Fide Housekeeper—Fraudulent Conveyance to Wife—Intention to Occupy Before Completion—Occupancy—Intention to Defraud Creditors.**

The house and lot sought to be subjected to Wingard's debts was owned by him before any of the debts owing to appellees were contracted; that it was of less value than one thousand dollars; that he was a bona fide housekeeper, with a family, living upon rented property and owning no other real estate except this house; that he did not use the house as a residence, but that is accounted for by the fact that it had not been completed. He sold it to Newkirk, and Newkirk sold it to Wingard's wife. No consideration passed. He

manifested an intention to occupy the house when completed. **Held,** that according to the spirit and intention of the Homestead Act, the house and lot were exempt from sale under execution, attachment or judgment of any court; that, although the, conveyance was made without consideration, and possibly with the intention on the part of Wingard to defraud his creditors, still the property was not subject to the payment of his debts before the conveyance, and the fact that the title is now in the wife does not change its status.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

December 12, 1871.

OPINION BY JUDGE LINDSAY:

All the testimony presented by these records conduces to establish that the pretended sale of the stock of merchandis by Wingard & Combs ·to Newkirk was merely colorable; that it was an attempted fraud upon these creditors in which Newkirk was a willing participant. The judgment of the chancellor, so far as it subjects this merchandise to the payment of appellees' claims must, therefore, be affirmed. It appears that the house and lot in Jeffersontown was owned by Wingord before any of the debts owing to these appellees were contracted; that it was of less value than one thousand dollars; that Wingord was a bona fide housekeeper with a family, living upon rented premises and owning no other realty except this house and lot. It does not appear that he used the house as a residence, but that is accounted for by the fact that it had not been completed and therefore could not be occupied. The testimony shows that he was at the time he is alleged to have fraudulently vested the title in his wife by the two conveyances, the one from himself to Newkirk and the other from Newkirk to his wife, busily engaged in completing the dwelling so that it might be used as a residence.

Considering all the circumstances, we think it may be naturally assumed that he was at the time treating the property as his future place of residence, and that he had manifested·his intention to actually use the house when completed as a home for himself and family.

According to the spirit and intention of the homestead act the house and lot "was exempt from sale under execution, attach-

ment or judgment of any court except to foreclose a mortgage given by the owner of the homestead, or for purchase money due therefor." *Brown Bros. etc., v. Martin, etc.,* 4 Bush 47.

We do not concur with the chancellor that Wingord's conveyance to Newkirk affects the claim of Mrs. Wingord, who now holds the title to the house and lot.

This conveyance was without consideration and possibly made by Wingord with the intent to defraud his creditors. But the property conveyed was not subject to the payment of the appellees' debts, before the conveyance, and we are not aware of any principle of law which will authorize them to subject it now that the title is held by the wife. The homestead act, expressly provides that if the husband had retained the title, he would not have waived the exemption except by a writing subscribed by himself and wife, and acknowledged and recorded in the same manner as conveyances of real estate. Section 5, Myers' Supplement, 715.

The wife did not join in the conveyance to Newkirk, nor in any manner participate in the fraudulent intent of her husband and Newkirk. She is the mere recipient of a gift of property from her husband, which property he could not, before the gift was made, permit to be subjected to the payment of his debts without her written consent, given upon privy examination.

We are of opinion that the chancellor erred in subjecting the house and lot described in said two deeds to the payment of appellees' debts, and to that extent the judgment in these causes is reversed. The same are remanded for further proper proceedings consistent with this opinion.

*Fox, for appellants.*